WO                          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


RONALD ARGENTO, et al,                )
                                      )
                    Plaintiffs,       )
                                      )
          vs.                         )
                                      )
SYLVANIA LIGHTING SERVICES CORP.,     )
                                      )          No. 2:13-cv-0351-HRH
                    Defendant.        )
_____)

O R D E R

Motion for Summary Judgment as to Claims Alleged by
Plaintiffs Clifton Anthony, Hector Daza-Frias, Juan Forrellat. and Craig Zuchelkowski

        Defendant moves for summary judgment on the claims alleged by plaintiffs Clifton

Anthony, Hector Daza-Frias, Juan Forrellat, and Craig Zuchelkowski.[1]  This motion is

opposed.[2]  Oral argument was requested by defendants.  However, the issues before the

court are largely legal in nature and have been well researched and briefed.  Oral argument

would not be helpful.[3]

_____

        [1]Docket No. 178.

        [2]Docket No. 188.

        [3]A district court may decide a motion for summary judgment "without oral argument
(continued...)

<u>Facts</u>

Plaintiffs Clifton Anthony, Hector Daza-Frias, Juan Forrellat, and Craig Zuchelkowski[4] worked for defendant Sylvania Lighting Services Corporation on a lighting service project for the Clark County School District (CCSD) in Nevada. The CCSD project began in July 2011 and ended in January of 2012. Plaintiffs allege that they worked more than 40 hours per week while working on the CCSD project but that they were only paid for 40 hours of work per week no matter how many hours they actually worked.

On February 24, 2012, plaintiffs filed a complaint against defendant for unpaid overtime with the Nevada Labor Commission. The claims were referred to CCSD for investigation, which made a series of determinations, to which plaintiffs were allowed to object.[5] A pre-hearing conference was held in March 2013, after which discovery was taken, and then a Final Hearing was held on January 22, 2014.[6] On May 5, 2014, a Final Order was

---

[3](...continued)
if the parties can submit their papers to the court." <u>Partridge v. Reich</u>, 141 F.3d 920, 926 (9th Cir. 1998).

[4]Any reference to "plaintiffs" herein is limited to these four plaintiffs.

[5]Final Order at 1, Exhibit 1, Defendant's Request for Judicial Notice [etc.], Docket No. 178-2. Defendant requests that the court take judicial notice of the final order of the Nevada Labor Commission. Plaintiffs do not oppose the court taking judicial notice of the Final Order. <u>See</u> Plaintiffs' Response [etc.] at 1, Docket No. 188. The court will take judicial notice of the Final Order.

[6]Final Order at 1, Exhibit 1, Defendant's Request for Judicial Notice [etc.], Docket No.
(continued...)

-2-

filed.  The ALJ determined that plaintiffs were due overtime that they had not been paid.[7]

Zuchelkowski was awarded $12,041.87 in back overtime wages; Anthony was awarded

$10,292.16; Diaz-Frias was awarded $5,978.90; and Forrellat was awarded $6,119.52.[8]  The

ALJ declined to assess any forfeitures against defendant, which are available under Nevada

law "against a contractor where the worker is not paid the applicable prevailing wage rate

for work performed on a prevailing wage project."[9]  The ALJ declined to assess any

forfeitures because they would have been retained by CCSD and the ALJ felt that such an

assessment would be a windfall for CCSD "given [its] failure to meet [its] statutory

responsibilities under NRS 338.070."[10]  The ALJ also declined to assess any administrative

fines or penalties against defendant, even though plaintiffs' counsel argued that "such fines

should be assessed because Sylvania took this matter to hearing thereby costing each of the

parties involved thousands of dollars in costs."[11]  Because the determinations that CCSD

---

[6](...continued)
178-2.

[7]Id. at 8-9.

[8]Id. at 13.

[9]Id. at 10.

[10]Id.

[11]Id.

made after its investigation favored defendant, the ALJ concluded that "[p]enalties will not be assessed against Sylvania simply because they elected to accept CCSD's findings."[12]

Although plaintiffs could have sought judicial review of the Final Order, no appeal was taken.   Rather, plaintiffs signed release forms "in order to receive payment of the award...."[13]   The release provided that plaintiffs were discharging the "State of Nevada, the Department of Business & Industry, and the Office of the Labor Commissioner, ... and all other state and local agencies" from any claims "arising out of, or by reason of, the investigation of the allegations raised in this matter and other matters relating thereto."[14] Plaintiffs "waive[d] all rights to file any additional such claims, actions, etc, relating to such wage claim[s]."[15]

While the Nevada administrative proceedings were ongoing, this action was commenced.   On December 20, 2013, plaintiffs filed an amended complaint in which they assert a single FLSA overtime claim.   Plaintiffs allege that "they worked more than forty

---

[12]Id.

[13]Declaration of Plaintiff Clifton Anthony at ¶ 2, Exhibit A; Declaration of Plaintiff Craig Zuchelkowski at ¶ 3, Exhibit B; Declaration of Plaintiff Hector Daza-Frias at ¶ 2, Exhibit C; and Forrellat Release at 1, Exhibit D; Plaintiffs' Response [etc.], Docket No. 188.

[14]Forrellat Release at 1, Exhibit D, Plaintiffs' Response [etc.], Docket No. 188.

[15]Id.

hours in a workweek" and that defendant failed to pay them overtime.[16]  More specifically, plaintiffs allege that "[t]hey worked an average of ten (10) to twelve (12) hours per workday."[17]  Although not specifically alleged, these overtime claims appear to be based on pre- and post-shift work.  And, plaintiffs Anthony and Zuchelkowski allege that from late August or early September 2011, "they worked between eleven (11) to fourteen (14) hours per day" because they became "designated drivers on the CCSD Project...."[18]  Plaintiffs also generally alleged that they were required to work during their unpaid meals breaks at times.[19]  Plaintiffs seek the overtime they contend they are due and liquidated damages in an amount equal to their unpaid overtime.

Defendant now moves for summary judgment on plaintiffs' FLSA claims on the grounds that these claims are barred by res judicata because of the Final Order in the Nevada administrative proceedings.  Defendant contends that allowing plaintiffs to pursue their FLSA claims could result in plaintiffs obtaining a double recovery.

---

[16]First Amended Complaint at 2, ¶ 1, Docket No. 39.

[17]Id. at 9, ¶ 67.

[18]Id. at ¶ 68.

[19]Id. at 10, ¶ 72.  There are also some allegations in the amended complaint of employees not being paid for travel time, but these plaintiffs' FLSA overtime claims are not based on allegations of unpaid travel time.

Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The initial burden is on the moving party to show that there is an absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor.  Id. at 255.  "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence."  T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

"The concept of res judicata embraces two doctrines, claim preclusion and issue preclusion (or collateral estoppel), that bar, respectively, a subsequent action or the subsequent litigation of a particular issue because of the adjudication of a prior action.  McClain v. Apodaca, 793 F.2d 1031, 1033 (9th Cir. 1986) (footnote omitted).  Claim preclusion treats a judgment, once rendered, as the full measure of relief to be accorded

between the same parties on the same claim or cause of action." Id. (footnote and citation omitted).

The threshold issue here is whether an unreviewed order from a state administrative agency or commission can be given preclusive effect in a FLSA case. "Title 28 U.S.C. § 1738 requires that [courts] give the same preclusive effect to state court judgments as they would be given in the state in which they were rendered." Miller v. Cnty. of Santa Cruz, 39 F.3d 1030, 1032 (9th Cir. 1994). However, "Section 1738 does not govern cases involving unreviewed decisions of a state administrative hearing board or commission." Id. "Nonetheless, as a matter of federal common law, federal courts give preclusive effect to the findings of state administrative tribunals in subsequent actions under § 1983." Id. However, federal courts do not give unreviewed administrative determinations preclusive effect for Title VII claims. Univ. of Tennessee v. Elliott, 478 U.S. 788, 796 (1986). But, this is not a § 1983 action, nor is it a Title VII case. This case involves only FLSA claims, and the Ninth Circuit has never considered whether preclusive effect should be given to unreviewed decisions of a state administrative commission or agency in a subsequent FLSA case.

There are cases from other jurisdictions that have considered the question of whether an unreviewed decision of a state administrative agency or commission should be given preclusive effect in a subsequent FLSA case. In Akwesi v. Uptown Lube & C/W, Inc., No. 07 Civ. 335(NRB), 2007 WL 4326732, at *1 (S.D.N.Y. Dec. 3, 2007), the plaintiffs filed a

complaint on June 14, 2005 with the New York State Department of Labor "claiming that Uptown Lube failed to pay its employees proper overtime wages."  The Department of Labor issued a Final Report of its investigation on March 10, 2006, in which it "determined that Uptown Lube had paid overtime', but had 'failed to pay spread of hours for the period 10/03-11/05.'"  Id.  "'Spread of hours' is a species of overtime payment required by New York state labor regulations, but not by federal law."  Id.  Basically, it requires that "[i]n addition to overtime at one and one half times the regular rate, an employer must pay an employee one extra hour's worth of wages for every day the employee's workday extends beyond ten hours."  Id.  The Department of Labor awarded the plaintiffs back overtime pay and Uptown Lube paid each plaintiff the back "spread of hours" overtime pay he or she was due.  Id. at *2.  On January 16, 2007, the plaintiffs filed a complaint in federal court against Uptown Lube, alleging a FLSA overtime claim and other state law claims.  Id.  Uptown Lube moved to dismiss the plaintiffs' complaint.  Id.  The court rejected the "defendant's first argument ... that the complaint should be dismissed for lack of subject matter jurisdiction, under Fed.R.Civ.P. 12(b)(1), because any case or controversy has been rendered moot by the NYS DOL findings and subsequent payments."  Id. at *3.  The court found that it did not

> need [to] even address the question of whether the NYS DOL
> findings-the judicially unreviewed findings of a state adminis-
> trative agency-are entitled to preclusive effect in this Court, for
> it is clear that Uptown Lube remained in business for a period

> of time after the conclusion of the NYS DOL investigation, and
> therefore this Court would retain jurisdiction over at least a
> portion of plaintiffs' claims even if we were to give preclusive
> effect to the NYS DOL findings.

Id. However, the court did "note that it will be unlikely that defendant can assert preclusion on the basis of the NYS DOL investigation.  While unreviewed factual determinations of state agencies may be given preclusive effect in federal court, this is not so in all circumstances, and appears to not be so in suits brought under the FLSA."  Id. (internal citation omitted).   The court also noted that "the broad remedial purpose underlying the FLSA seems antithetical to common law doctrines of preclusion."  Id. at *3 n.12.

The Akwesi court cited to Solimino v. Astoria Federal Savings and Loan Association, 901 F.2d 1148 (2nd Cir. 1990), as the authority supporting the proposition that preclusive effect should not be given to unreviewed state agency decisions in FLSA cases.  Solimino involved the question of whether preclusive effect should be given to an unreviewed state agency decision in a subsequent ADEA case.  Id. at 1149.  The plaintiffs argued that the court should look to Title VII cases for guidance and the defendant suggested that the court should look to FLSA cases instead.  The court observed that

> assuming arguendo that we should look to the FLSA instead of
> Title VII for guidance as to the preclusion issue in this ADEA
> suit, Astoria fails to cite any part of the FLSA or its interpretive
> caselaw that indicates Congress intended in the FLSA to give
> preclusive effect to the judicially unreviewed fact-finding of a
> state administrative agency.

-9-

Id. at 1152.

In Thakkar v. Balasuriya, Case No. H-09-0841, 2009 WL 2996727, at *1 (S.D. Tex. Sept. 9, 2009), the defendants argued that Thakkar's FLSA claims were barred by an earlier unreviewed state agency decision.  The court "conclude[d] that Thakkar's FLSA claims are not exempt from common law preclusion and that the FLSA claims that Thakkar has asserted in this action are barred by collateral estoppel (issue preclusion)."  Id. at *4.  The court explained that

> Thakkar has failed ... to show that Congress intended the FLSA's administrative scheme to exempt FLSA claims from common law principles of preclusion.  Absent a showing of Congressional intent to the contrary, the court concludes that the FLSA claims at issue in this case are not exempt from common law principles of preclusion.

Id. at *5.

Similarly, the court in Jones v. Hamic, 875 F. Supp. 2d 1334, 1349 (M.D. Ala. 2012), concluded "that unreviewed state agency findings can be given collateral estoppel effect in a FLSA suit."  The court explained:

> In Elliott, the Supreme Court implied strongly that there exists a presumption in favor of preclusion, and that the party challenging the preclusive effect of an unreviewed state agency decision bears the heavy burden of showing that Congress intended to rebut the presumption. Indeed, Congress knows about federal preclusion law when it legislates, and absent a strong showing that it intended to override firmly entrenched preclusion law by enacting FLSA, this Court will give the ADIR's findings collateral estoppel effect to the extent that an

Alabama court would. Doing so furthers the principles of federalism, comity, efficiency, and repose underlying the collateral estoppel doctrine. Here, Jones has failed to offer up an argument about whether Congress intended FLSA to override federal preclusion law.

Id. (internal citations omitted).

Here, plaintiffs argue that preclusive effect to unreviewed state agency decisions should not be given in FLSA cases because FLSA is a remedial statute. See Lambert v. Ackerley, 180 F.3d 997, 1003 (9th Cir. 1999) ("the FLSA is a remedial statute"). Plaintiffs also suggest that the Ninth Circuit recognizes similarities between Title VII, the ADEA, and the FLSA, implying that because preclusive effect is not given for Title VII and ADEA claims, it then follows that preclusive effect should not be given to unreviewed decisions by state agencies in FLSA cases. Plaintiffs also point out that "[w]hile the Ninth Circuit has not specifically addressed the question of whether FLSA claims may only be settled and resolved in two ways, district courts in the Ninth Circuit have followed Lynn's Food Stores." McKeen v. Chaplin v. Franklin American Mortg. Co., Case No. C 10–5243 SBA, 2012 WL 6629608, at *2 n.3 (N.D. Cal. Dec. 19, 2012). In Lynn's Food Stores, the court stated:

There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages.

> The only other route for compromise of FLSA claims is pro-
> vided in the context of suits brought directly by employees
> against their employer under section 216(b) to recover back
> wages for FLSA violations.

Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dep't of Labor, 679 F.2d 1350, 1352-53

(11th Cir. 1982) (footnote omitted).  Plaintiffs argue that because there are only two ways in

which to resolve a FLSA claim, either through the Department of Labor or through a lawsuit

brought under Section 216(b), that means that unreviewed decisions of a state agency should

not be given preclusive effect.  Thus, plaintiffs urge the court to follow Akwesi and Solimino

and conclude that preclusive effect should not be given to unreviewed decisions of a state

agency in FLSA cases.

The court finds Akwesi unpersuasive.  As for Solimino, all the court stated there was

that the defendant had not pointed to anything that suggested that Congress intended that

unreviewed state court decisions would have preclusive effect as to FLSA claims.  But, the

contrary is true as well.  There is nothing in the FLSA that indicates that Congress did not

intend that the usual presumption of preclusion should apply.  The fact that the FLSA is a

remedial statute does not mean that the usual presumption of preclusion should not apply.

As for plaintiffs' reliance as Lynn's Foods, that case concerned the ways in which FLSA

wage claims could be settled and did not deal with the question of whether preclusive effect

should be given to unreviewed decisions of a state agency or commission.

As to that question, the court finds <u>Gorney v. Arizona Board of Regents</u>, 43 F. Supp. 3d 946, 1204 (D. Ariz. 2014), persuasive.  There, the plaintiff alleged that he had been wrongfully terminated from the University of Arizona.  <u>Id.</u> at 949.  The plaintiff requested and was granted a post-termination hearing.  <u>Id.</u> at 950.  The review panel issued a Hearing Decision upholding the plaintiff's termination, which was accepted by the University's Senior Vice-President and affirmed on reconsideration.  <u>Id.</u>  The plaintiff was advised that he could appeal the termination decision to the Arizona Superior Court, but he did not take such an appeal.  <u>Id.</u> at 950-51.  Instead, he filed suit in federal district court, asserting, among other claims, a FLSA overtime claim and a FLSA retaliation claim.  <u>Id.</u> at 949-50.   The defendants moved to dismiss the plaintiff's First Amended Complaint, "arguing, among other things, that [the p]laintiff failed to appeal from the University's decision discharging him from employment by filing an action in Superior Court under the Administrative Review Act, and that this failure precludes him from filing the claims raised in the FAC." <u>Id.</u> at 950 (internal citations omitted).  The court considered whether claim preclusion could be applied in this situation and concluded that it could under the criteria set forth in <u>United States v. Utah Construction & Mining Co.</u>, 384 U.S. 394, 422 (1966).[20]  <u>Id.</u> at 953-55.

_____

[20]The Ninth Circuit has "held that the federal common law rules of preclusion described in <u>Elliott</u> extend to state administrative adjudications of legal as well as factual issues, even if unreviewed, so long as the state proceeding satisfies the requirements of fairness outlined in <u>Utah Construction,</u> 384 U.S. at 422[.]"  <u>Guild Wineries and Distilleries v. Whitehall Co.</u>, 853 F.2d 755, 758 (9th Cir. 1988).

-13-

"The fairness requirements of <u>Utah Construction</u> are: (1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate." <u>Miller</u>, 39 F.3d at 1033.  Here, the fairness requirements are plainly met.

The Nevada Labor Commission ALJ was acting in a judicial capacity.  "[O]ne of the factors indicating that the administrative agency had acted in the 'judicial capacity' required by <u>Utah Construction</u> [is] that the [plaintiff] had both the right to seek a rehearing before the agency and the right to petition for review in superior court." <u>Wehrli v. County of Orange</u>, 175 F.3d 692, 695 (9th Cir. 1999) (citation omitted).  Plaintiffs had such rights. In addition, the ALJ heard motions, conducted a hearing, and awarded plaintiffs a monetary judgment, all of which indicates that the ALJ was acting in a judicial capacity.  The ALJ also resolved issues of fact properly before him.  And, plaintiffs had an adequate opportunity to litigate their overtime claims in the Nevada proceedings.  They engaged in motion practice, participated in evidentiary hearings, were represented by counsel, and introduced witness testimony.

Because the fairness requirements of <u>Utah Construction</u> are met, the court concludes that preclusive effect can be given an unreviewed decision by a state administrative commission or agency in a FLSA case.  The next question then is whether the Final Order should be given preclusive effect.

-14-

To determine what the preclusive effect of the Final Order would be, the court looks to Nevada law.  Olson v. Morris, 188 F.3d 1083, 1086 (9th Cir. 1999).  Nevada has "adopted the doctrine of administrative res judicata...."  Campbell v. Nev., Dep't of Taxation, 827 P.2d 833, 835 (Nev. 1992).  For res judicata to apply the 1) "the issue decided in the prior adjudication" must be "identical to the issue presented in the action in question;" 2)  there must be "a final judgment on the merits;" and 3) "the party against whom the judgment is asserted" must have been "a party, or in privity with a party to the prior adjudication." Britton v. City of N. Las Vegas, 799 P.2d 568, 570 (Nev. 1990).  These three factors apply to both issue preclusion and claim preclusion.  Five Star Capital Corp. v. Ruby, 194 P.3d 709, 713 (Nev. 2008).  Issue preclusion requires consideration of a fourth factor as well, which is whether "the issue was actually and necessarily litigated."  Id.  Under Nevada law, "claim preclusion may apply in a suit to preclude both claims that were or could have been raised in a prior suit, while issue preclusion would not preclude those issues not raised in the prior suit."  Id. at 714.

identical claim or issue

"For the purposes of defining a 'claim' under Nevada law, '[t]he authorities agree that when the same evidence supports both the present and the former cause of action, the two causes of action are identical.'"  Holcombe v. Hosmer, 477 F.3d 1094, 1098 (9th Cir. 2007) (quoting Round Hill Gen. Improvement Dist. v. B–Neva, Inc., 606 P.2d 176, 178 (Nev. 1980)).

In addition, if the claims in both cases are "based on the same set of facts and circumstances", then the claims are identical. <u>Five Star Capital Corp.</u>, 194 P.3d at 714.   Claim preclusion applies to all grounds of recovery that were or could have been brought in the first case. <u>Holcombe</u>, 477 F.3d at 1098.

Here, the same evidence required to prove plaintiffs' overtime claims under Nevada law would be used to prove plaintiffs' FLSA overtime claims.  In addition, this case and the Nevada state administrative proceedings both involve the same set of facts and the claims in both cases are based on the same grounds of recovery, namely overtime.  It does not matter that plaintiffs could not have brought their FLSA claims in the Nevada administrative proceedings.  As the court noted in <u>Holcombe</u>, "[a]lthough Holcombe argues that she was not able to assert First Amendment retaliation at her administration hearing, that is not the test for a claim under Nevada law." <u>Id.</u> at 1099.  Rather, the test is whether the claims involve the same evidence or facts.  <u>Id.</u> at 1098.  Plaintiffs' state-law overtime claims and their FLSA claims involve the same facts and circumstances, and thus these claims are identical.

Defendant also argues that plaintiffs' claim for FLSA liquidated damages is identical to plaintiffs' request for administrative penalties under Nevada law because each claim involves the same evidence and facts.  Plaintiffs argue, however, that their claim for liquidated damages is not identical to their claim for administrative penalties under Nevada

-16-

law because liquidated damages under the FLSA are not penalties.  See Local 246 Utility Workers Union of Amer. v. S. Calif. Edison Co., 83 F.3d 292, 297 (9th Cir. 1996) (FLSA "liquidated damages represent compensation, and not a penalty").  Moreover, plaintiffs point out that liquidated damages are mandatory unless the court makes a determination that the employer objectively and subjectively acted in good faith.  Id. Plaintiffs argue that there is no indication in the Final Order that the ALJ made any determination regarding defendant's subjective or objective good faith, although the ALJ did suggest that defendant's conduct was intentional or in reckless disregard of plaintiffs' rights when he observed that

> [a]n employer cannot absolve themselves of their responsibility to pay overtime by saying at the onset of a project that it will not be granted, then simply looking the other way as they reap the benefits of the hours of additional, unpaid work performed. For CCSD and Sylvania to ignore this reality defies logic.[21]

Plaintiffs argue that if the ALJ had considered the applicable law under the FLSA regarding liquidated damages, the Final Order strongly suggests that he would have had no choice but to award liquidated damages.

The problem with the parties' liquidated damages' arguments is that FLSA liquidated damages are not a "claim", but rather a remedy.  29 U.S.C. § 216(b).  If plaintiffs' FLSA overtime claims are precluded, the court cannot separately consider whether any of plaintiffs' possible remedies under the FLSA are also precluded.  If plaintiffs are barred from

---

[21]Final Order at 9, Exhibit 1. Defendant's Request for Judicial Notice [etc.], Docket No. 178-2.

pursuing their FLSA claims, then the issue of what damages or remedies they might be entitled to under the FLSA is not before the court.

<u>final judgment</u>

Although an order by an ALJ may be considered a final judgment on the merits, <u>Roberts v. Las Vegas Valley Water Dist.</u>, 849 F. Supp. 1393, 1400 (D. Nev. 1994), plaintiffs argue that there was no final judgment on the merits because there was no judicial review of the Final Order.  Plaintiffs contend that they entered into an agreement in which they waived their rights to appeal in order to receive the monetary award provided in the Final Order, but that they did so with the understanding that this would not in any way affect their right to pursue their FLSA claims.  Plaintiffs have all averred that it was their understanding that waiving their right to appeal would not have any affect on their ability to pursue their FLSA claims in this case.[22]

The Final Order was a final judgment on the merits.  As for plaintiffs' contention that they did not intend to give up their right to pursue their FLSA claims, plaintiffs expressly "waiv[ed] <u>all</u> rights to  to file <u>any</u> additional such claims, <u>actions, etc. relating to such wage</u>

---

[22]Anthony Declaration at 2, ¶ 4, Exhibit A; Zuchelkowski Declaration at 2, ¶ 4, Exhibit B; Daza-Frias Declaration at 2, ¶ 4, Exhibit C; Forrellat Release at 1, Exhibit D; Plaintiffs' Response [etc.], Docket No. 188.

claim[s]."[23]  Plainly plaintiffs gave up not only the right to seek review of the administrative

decision but also the right to file an action such as this one before the court.

<u>same parties</u>

There is no dispute that plaintiffs and defendant were parties to the Nevada

administrative hearing.

In sum, plaintiffs' FLSA overtime claims are barred by claim preclusion.[24]  Plaintiffs'

FLSA claims are identical to plaintiffs' state-law overtime claims.  The Final Order is a final

judgment.  And, both plaintiffs and defendant were parties to the Nevada administrative

proceedings.  Because plaintiffs' FLSA claims are barred by claim preclusion, the issue of

whether they are entitled to any damages under the FLSA, such as liquidated damages,  is

also barred.

As a final matter, defendant contends that plaintiffs have not brought any claims for

unpaid meal times.  "FLSA does not require compensation for an employee's lunch period,

but an employee cannot be docked for lunch breaks during which he is required to continue

with any duties related to his work." <u>Busk v. Integrity Staffing Solutions, Inc.</u>, 713 F.3d 525,

531 (9th Cir. 2013) (citation omitted), <u>overruled on other grounds by</u>, <u>Integrity Staffing</u>

---

[23]Forrellat Release at 1, Exhibit D, Plaintiffs' Response [etc.], Docket No. 188
(emphasis added).

[24]Because claim preclusion applies here, the court need not consider defendant's
argument that the issue of whether plaintiffs are entitled to overtime was actually and
necessarily litigated in the Nevada administrative proceedings.

<u>Solutions, Inc. v. Busk,</u> 135 S. Ct. 513 (2014).  Defendant contends that it provided meal breaks to plaintiffs without requiring them to perform any substantial duties during these breaks.

Plaintiffs do not dispute that they generally were given a 30-minute lunch break each day.  But, they contend that there is also evidence that sometimes their lunch breaks were interrupted with work duties.  Zuchelkowski testified that he was sometimes "told to go and pick something up, drop it off at the schoolyard that is over by The Palms hotel" during his lunch break and that this may have happened 3-4 or maybe more times.[25]  Daza-Frias testified that he did not take a full 30-minute lunch every day because sometimes he was told "to do something else" or he was "pulled" back to work before his lunch time ended.[26] Clifton testified that he was not always provided with a 30-minute lunch break.[27]  Plaintiffs argue that this testimony is sufficient to create genuine issues of material fact as to whether there were times that they worked through part of their lunch break.

"As a general rule, employees cannot recover for otherwise compensable time if it is <u>de minimis</u>."  <u>Lindow v. United States</u>, 738 F.2d 1057, 1062 (9th Cir. 1984).  "An important

---

[25]Deposition of Craig Zuchelkowski at 44:24-46:15, Exhibit E, Plaintiffs' Response [etc.], Docket No. 188.

[26]Deposition of Hector Daza-Frias at 42:10-45:21, Exhibit F, Plaintiffs' Response [etc.], Docket No. 188.

[27]Deposition of Anthony Clifton at 55:7-10, Exhibit G, Plaintiffs' Response [etc.], Docket No. 188.

factor in determining whether a claim is <u>de minimis</u> is the amount of daily time spent on the additional work." <u>Id.</u>  "There is no precise amount of time that may be denied compensation as <u>de minimis</u>.  No rigid rule can be applied with mathematical certainty." <u>Id.</u>  "Rather, common sense must be applied to the facts of each case." <u>Id.</u>

The evidence suggests that whatever time might be involved here was <u>de minimis</u>.  But, more importantly, if plaintiffs had overtime claims based on unpaid meal breaks, they could have raised those claims in the state administrative proceedings, rather than only claiming overtime based on pre- and post-shift work.  In addition, in return for the immediate payment of the Nevada award, plaintiffs agreed to not file any further wage actions.  Any overtime claims plaintiffs may have had based on unpaid meal breaks are barred by claim preclusion.

Conclusion

Defendant's motion for summary judgment[28] as to the claims alleged by plaintiffs Clifton Anthony, Hector Daza-Frias, Juan Forrellat, and Craig Zuchelkowski is granted.

DATED at Anchorage, Alaska, this 1st day of September, 2015.

/s/ H. Russel Holland<br>United States District Judge

---

[28]Docket No. 178.

-21-